UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NYU LANGONE HOSPITALS,

                Plaintiff,

  -against-

UNITEDHEALTHCARE INSURANCE
COMPANY, UNITEDHEALTHCARE OF NEW
YORK, INC., and OXFORD HEALTH PLANS
(NY), INC.,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 1:24-cv-04803-PKC

Hon. P. Kevin Castel, U.S.D.J.

---

**PLAINTIFF NYU LANGONE HOSPITALS' REPLY
MEMORANDUM OF LAW ON SUBJECT MATTER JURISDICTION**

---

GARFUNKEL WILD, P.C.
*Attorneys for Plaintiff*
111 Great Neck Road
Great Neck, New York 11021
(516) 393-2200

<u>Of Counsel</u>
Andrew L. Zwerling, Esq.
Joshua M. Zarcone, Esq.

4864-6614-0912v.1

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................................1

ARGUMENT .........................................................................................................................................1

POINT I

    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER
    NYU'S BREACH OF CONTRACT CLAIM ..................................................................1

        A.    NYU's Claim Does Not "Necessarily Raise" A Federal Issue ...............................2

        B.    The Purported Federal Issue Is Not "Actually Disputed" ......................................4

        C.    The Purported Federal Issue Is Not "Substantial" .................................................4

        D.    Exercising Jurisdiction Will Disturb The Balance Of Judicial
            Power ..........................................................................................................................5

POINT II

    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
    JURISDICTION .................................................................................................................6

CONCLUSION .....................................................................................................................................7

4864-6614-0912v.1

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AXTAX Holdings 227, LLC v. CohnReznick LLP*,
   2024 WL 2866544 (S.D.N.Y. June 4, 2024) ............................................................................. 4

*Ball v. Baker*,
   2022 WL 17808785 (S.D.N.Y. Dec. 18, 2022) ......................................................................... 2

*Biodiagnostic Labs, Inc. v. Aetna Health Inc. (New York)*,
   2024 WL 3106169 (S.D.N.Y. June 23, 2024) ........................................................................... 3

*Broder v. Cablevision Sys. Corp*
   418 F.3d 187, 195 (2d Cir. 2005) .............................................................................................. 2

*Combs v. Spring Creek Produce, LLC*,
   2017 WL 3687323 (E.D. Tenn. Aug. 25, 2017) ....................................................................... 3

*Corley v. Vance*,
   365 F.Supp.3d 407 (S.D.N.Y. 2019) ......................................................................................... 7

*D.B. Zwirn Spec. Opp. Fund, L.P. v. Tama Broadcasting, Inc.*,
   550 F.Supp.2d 481 (S.D.N.Y. 2008) ........................................................................................ 4

*Empire Healthchoice Assur., Inc. v. McVeigh*,
   547 U.S. 677 (2006) .................................................................................................................. 4

*Hill v. Pikeville Med. Ctr., Inc.*,
   2017 WL 690535 (E.D. Ken. Feb. 21, 2017) ....................................................................... 3, 4

*N.Y.C. Health & Hosps. Corp. v. WellCare of New York, Inc.*,
   769 F.Supp.2d 250 (S.D.N.Y. 2011) .................................................................................... 2, 5

*N.Y.C. Health & Hosps. Corp. v. WellCare of New York, Inc.*,
   801 F.Supp.2d 126 (S.D.N.Y. 2011) .................................................................................... 5, 7

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
   770 F.3d 1010 (2d Cir 2014) ..................................................................................................... 2

*Phillips Pet. Co. v. Texaco, Inc.*,
   415 U.S. 125 (1974) .................................................................................................................. 6

*RenCare, Ltd. v. Humana Health Plan of Texas, Inc.*
   395 F.3d 555 (5th Cir 2004) .............................................................................................. 2, 4, 5

*Tenet Healthsystem GB, Inc. v. Care Improvement Plus South Cent. Ins. Co.*,
    875 F.3d 584 (11 Cir. 2017)..................................................................................................4

**Statutes**

28 U.S.C. § 1331.................................................................................................................6, 7

28 U.S.C. § 1367....................................................................................................................7

4864-6614-0912v.1

NYU[1] respectfully submits this Reply Memorandum of Law in further support of its position on the Court's subject matter jurisdiction, and in response to the Memorandum of Law submitted by United on September 20, 2024 (ECF No. 30).

## PRELIMINARY STATEMENT

NYU's claim is far less complicated than United would have the Court believe. NYU contends United breached the Agreements by failing to implement contractually-mandated rate increases. (Indeed, United itself has openly acknowledged "this is a breach of contract case that will be determined by the interpretation of the parties' agreements," and it remains a mystery why United would remove such a case to federal court. ECF No. 1, at ¶ 9.) Alternatively, if the Agreements do not provide a remedy for United's underpayments, NYU seeks recovery under basic (state law) principles of equity. Federal law provides the formula to calculate NYU's recovery, but – as a matter of well-settled law – that alone *does not* confer federal jurisdiction.

To exercise jurisdiction over this case is to invite the removal of every single private payment dispute involving mere reference to a CMS fee schedule – or to any other federal formula, for that matter. Such an outcome is neither desirable nor supported by the case law.

## ARGUMENT

### POINT I

### THE COURT LACKS SUBJECT MATTER JURISDICTION OVER NYU'S BREACH OF CONTRACT CLAIM

Federal law does not *create* NYU's breach of contract claim. Rather, NYU's right to payment arises under a series of private contracts, which use a federal benchmark to calculate

---

[1] Capitalized terms not defined herein shall have the meaning assigned by NYU's Memorandum of Law dated August 29, 2024 (ECF No. 29).

United's payment obligations. Such a claim presents no federal question, and therefore has no place in federal court.

### A.     NYU's Claim Does Not "Necessarily Raise" A Federal Issue

United's continued reliance on *Wellcare* is confounding. 769 F.Supp. 2d 250 (S.D.N.Y. 2011). *Wellcare* involved an out of-network health care provider whose right to payment was entirely dependent on Medicare rules and regulations. Thus, in order to prevail, the *Wellcare* plaintiff *had* to prove a predicate violation of federal law. Here, NYU's right to payment arises under a private contract, and NYU need not prove that United violated Medicare regulations. Indeed, United may be compliant with federal law *and*, at the same time, still in breach of the Agreements. (For example, the Agreements may compel United to implement rate increases even if the Final Rule does not uniformly compel all MAOs to do so.)[2] United's reliance on *Broder v. Cablevision Sys. Corp.* – which was not even a health care-related dispute (let alone an in-network managed care reimbursement dispute), and which involved an alleged direct violation of federal law – is similarly misplaced. 418 F.3d 187, 195 (2d Cir. 2005). *See also NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010 (2d Cir 2014) (finding federal question where, unlike here, the defendant's ultimate "duty" was derived from federal law – not from a contract); *Ball v. Baker*, 2022 WL 17808785 (S.D.N.Y. Dec. 18, 2022) (finding federal question where, unlike here, the plaintiff's claims required proving a predicate violation of federal law).

Together, United and NYU cite only one appellate-level decision involving a payment dispute between a MAO and an in-network health care provider: *RenCare, Ltd. v. Humana Health Plan of Texas, Inc.* 395 F.3d 555 (5th Cir 2004). The *RenCare* court found no federal question,

---

[2]     *See* ECF No. 29, at p. 13 (citing Hospital Outpatient Prospective Payment System Update on Payment Rates for Drugs Acquired through the 340B Program – Informational for MAOs (December 20, 2022)) (stating that MAOs and in-network providers negotiate payment terms independently of CMS).

namely because the dispute – like this one – was "solely between [the insurer and the health care provider] and is based on the parties' privately-agreed-to payment plan." Id. at 558. Stated simply, in-network and out-of-network providers operate under entirely different sets of rules – particularly in the Medicare Advantage ("MA") context, where out-of-network providers must rely on the Medicare Act (rather than a contract) for payment. By repeatedly blurring this line and attempting to apply out-of-network principles to NYU, United distorts the basic framework of managed care contracting and reimbursement.

It bears repeating that merely incorporating a federal benchmark into a private contract does not create a federal question. Instead, federal law must *create* the claim. Recently, Judge Cogan addressed this very question in a dispute over reimbursement for COVID-19 diagnostic tests. *See Biodiagnostic Labs, Inc. v. Aetna Health Inc. (New York)*, 2024 WL 3106169 (S.D.N.Y. June 23, 2024). In declining to exercise jurisdiction over several breach of contract claims, Judge Cogan stated as follows: "Plaintiff's argument, however, is that … each of its three state law contract claims seek to incorporate the pricing mechanism in the CARES Act,[3] and that is sufficient basis to confer jurisdiction. *But that is not enough* … these are simple breach of contract claims in which any reference to the CARES Act will be only to measure what damages plaintiff is owed [.]" Id. at *5-6 (emphasis added). Likewise, the mere fact that NYU's damages are tied to a federal "pricing mechanism" does not confer jurisdiction. *See also, e.g.*, *Hill v. Pikeville Med. Ctr., Inc.*, 2017 WL 690535 (E.D. Ken. Feb. 21, 2017) (no federal question where contract tied plaintiff's compensation to federal formula for "WRVUs"); *Combs v. Spring Creek Produce, LLC*, 2017 WL 3687323 (E.D. Tenn. Aug. 25, 2017) (no federal question where plaintiff's claim relied on prices

---

[3] The "CARES Act" refers to the 2020 "Coronavirus Aid, Relief, and Economic Security Act."

set by the U.S. Department of Agriculture).  To hold otherwise is to hold that *every* managed care payment dispute involving reference to a CMS fee schedule necessarily belongs in federal court.

B.        **The Purported Federal Issue Is Not "Actually Disputed"**

The Court need not reach this second element of the Grable Test, because United's theory fails on the first one alone.  Nevertheless, United's logic on this point is circular, requiring the Court to accept the premise that NYU must prove a violation of federal law.  That is simply not the case, nor can United make it so by asserting *defenses* that may implicate federal issues.  *See* ECF No. 30, at pp. 15-16.  NYU alleges the Final Rule – the validity of which is uncontested here – triggered United's contractual duty to increase reimbursement rates for 340B drugs.  Tying those rates to a CMS formula does not place a federal issue in dispute.  Stated differently, the parties do not dispute the interpretation of the CMS formula incorporated into the Agreements.  Rather, the sole issues are whether the CMS formula is to be applied in this case under state law contract or equitable principles, issues that do not implicate any questions of federal law.  *See RenCare*, 395 F.3d at 555; *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 680 (2006); *Tenet Healthsystem GB, Inc. v. Care Improvement Plus South Cent. Ins. Co.*, 875 F.3d 584, 591 (11 Cir. 2017); *AXTAX Holdings 227, LLC v. CohnReznick LLP*, 2024 WL 2866544, at *8-10 (S.D.N.Y. June 4, 2024); *D.B. Zwirn Spec. Opp. Fund, L.P. v. Tama Broadcasting, Inc.*, 550 F.Supp.2d 481, 487 (S.D.N.Y. 2008); *Hill*, 2017 WL 690535, at *2 (all holding no federal question where plaintiff's right to relief was contract-based).

C.        **The Purported Federal Issue Is Not "Substantial"**

NYU does not seek payment under any Medicare rule or regulation, but under private contracts in which the parties agreed to incorporate a federal pricing mechanism.  United responds that NYU asks the Court to award "the lump sum payments promulgated" by the Final Rule. ECF No. 30, at p. 17.  But again, the Final Rule and the lump sum payments merely provide the

4

mechanism by which to calculate NYU's recovery – they do not create United's underlying payment obligation, which is contractual in nature. Indeed, United's claim only highlights the absurdity of its position – which, evidently, is that *every* single contract referencing a federal "formula," "benchmark," or "pricing mechanism" necessarily creates a federal question. This claim has been so roundly rejected by so many courts that it is hardly worth addressing. *See* Point I.A, *supra*; ECF No. 29 at pp. 11-12 (surveying cases).

Still, United clings to *WellCare*, again ignoring the wide gulf between in-network providers (whose payment rights arise under a contract) and out-of-network providers (whose payment rights arise under various Medicare statutes and regulations). Even the *WellCare* court went out of its way to recognize this distinction, emphasizing that the parties to that case "had *no contractual relationship* and reimbursement [was] therefore governed by a complex federal regulatory scheme." *Wellcare*, 769 F.Supp.2d at 258 (emphasis added). By contrast, the *RenCare* case – like this one – involved a payment dispute between an MAO and an in-network provider. Because "contracts between [MAOs] and [in-network] providers are subject to very few restrictions," and because MAOs and in-network providers "can generally negotiate their own [payment] terms," any effort to compare NYU to an out-of-network provider fails on its face. *Id*. This case turns on whether United had a contractual duty to NYU and, if so, whether Unied complied. It is a payment dispute between parties to a private contract, and does not raise a federal question – much less a "substantial" one that implicates the so-called "intricate regulatory schemes" governing out-of-network claims.

D.    **Exercising Jurisdiction Will Disturb The Balance Of Judicial Power**

In yet another resort to circular logic, United contends jurisdiction is proper because NYU's complaint "concerns an 'intricate federal regulatory scheme,'" which … governs

5

reimbursement between [MAOs] and providers." ECF No. 30, at p. 18. But NYU has shown, *ad nauseam*, that its right to payment is wholly a creature of contract (or, alternatively, state law equitable principles). United cannot genuinely dispute that (i) NYU is an in-network provider with United's MA plans; (ii) United processed the disputed 340B drug claims pursuant to the Agreements; and (iii) United paid those claims using the negotiated fee schedule. In other words, after treating NYU as an in-network provider for all purposes, United attempts to shoehorn this case into federal court by applying out-of-network reimbursement rules. But once the Court rejects the flawed premise that NYU's right to payment arises under federal law, United's jurisdictional is revealed to be meritless.

Last, United does not credibly dispute that its theory will bring *all* contract disputes linked to a CMS fee schedule – or any other federal formula – into federal court. This will mark a dramatic federal intrusion into contract disputes, which are traditionally the province of state courts. NYU cited an entire page worth of case law, from courts at various levels across the country, rejecting United's expansive interpretation of 28 U.S.C. § 1331. *See* ECF No. 29, at pp. 20-21. United offered nothing in response.

For all of the foregoing reasons, the Court should find that United has failed to carry its burden under the Grable Test, and remand this action to the state court in which it was filed.

**POINT II**

**THE COURT SHOULD DECLINE
TO EXERCISE SUPPLEMENTAL JURISDICTION**

NYU's Second and Third Causes of Action are for unjust enrichment and *quantum meruit*, respectively. *See* Complaint, ¶¶ 73-85. Both claims are built on basic, state law principles of equity, and provide no independent basis for federal jurisdiction. *See Phillips Pet. Co. v. Texaco, Inc.*, 415 U.S. 125, 129 (1974) ("Texaco's suit … is, in effect, an action in *quantum meruit*, whose

6

source is state law and not federal law."). Thus, the Court should find that NYU's second and third causes of action present no federal question and are not removable under 28 U.S.C. § 1331. Alternatively, if the Court determines it lacks subject matter jurisdiction over NYU's breach of contract claim – as NYU contends it should – the Court should likewise decline to exercise supplemental jurisdiction over NYU's second and third causes of action under 28 U.S.C. § 1367. *See, e.g.*, *Corley v. Vance*, 365 F.Supp.3d 407, 462-63 (S.D.N.Y. 2019) (declining to exercise supplemental jurisdiction) ("[G]iven that only state-law issues remain in this case, comity dictates that the Court decline to decide those disputes.") (citing *Bray v. City of N.Y.*, 365 F.Supp.2d 277, 287 (S.D.N.Y. 2004) (declining to exercise supplemental jurisdiction over state claims despite federal defenses)); *N.Y.C. Health & Hosps. Corp. v. WellCare of New York, Inc.*, 801 F.Supp.2d 126, 142 (S.D.N.Y. 2011) (remanding unjust enrichment claim to state court).

## CONCLUSION

For all of the foregoing reasons, and for the reasons set forth in its August 29, 2024 Memorandum of Law (ECF No. 29), NYU respectfully requests that the Court remand this action to New York County Supreme Court, and grant such other and further relief as it may deem just, equitable, or proper.

Dated: October 14, 2024

> GARFUNKEL WILD, P.C.
> *Attorneys for Plaintiff NYU Langone Hospitals*
>
> By:    */s/ Andrew L. Zwerling*
> Andrew L. Zwerling
> Joshua M. Zarcone
> 111 Great Neck Road
> Great Neck, New York 11021
> (516) 393-2200

7